# In the United States Court of Federal Claims

No. 12-346C
(Filed: September 10, 2012)

* * * * * * * * * * * * * * * * * * * *

ELMENDORF SUPPORT SERVICES
JOINT VENTURE,

       *Plaintiff*,

v.

THE UNITED STATES,

       *Defendant*.

* * * * * * * * * * * * * * * * * * * *

## ORDER

Pending in this bid protest is defendant's reassertion of a motion to dismiss for lack of jurisdiction. Earlier, we denied a motion to dismiss grounded in part on a similar argument. *See Elmendorff Support Servs., JV, v. United States*, No. 12-346, 2012 WL 2367035 (Fed. Cl. June 22, 2012). In its renewed motion, defendant contends that the circumstances have changed and that plaintiff, the former incumbent contractor to provide base supply services at Joint Base Elmendorf-Richardson Air Force Base, Alaska, no longer has standing to protest a decision by the Air Force to "in-source" the work. The matter is fully briefed and oral argument was heard on September 4, 2012. For the following reasons, we grant the government's motion.[1]

In March 2010, the Air Force conducted a "DTM-COMPARE"[2] cost comparison between plaintiff performing the services and performance by

---

[1] An administrative record has not been produced, but the facts relied upon herein are not in dispute. We adopt as if set out herein the background facts from our prior decision and rely on the declaration of Patricia Csank, attached to the present motion to dismiss.

[2] DTM-COMPARE is a cost-comparison software tool provided by the Air Force Manpower Agency.

civilian government employees. The cost comparison was done in response to a statutory requirement that the Department of Defense consider whether civilian employees can be used to perform functions being performed by outside contractors.[3] The Air Force concluded that performance by government employees would be more cost-effective, saving the Air Force $5.4 million or 18 percent over a five-year period. Plaintiff filed suit challenging that determination.

Plaintiff's original and first-amended complaints argued that in-sourcing of the contract services lacked a rational basis, was arbitrary and capricious, and violated 10 U.S.C. § 129a (2006) and 10 U.S.C. § 2463 (West Supp. 2012), which concern force management and the use of civilian personnel in the performance of Department of Defense ("DOD") functions. Our opinion denying the previous motion to dismiss was issued on June 22, 2012. We held that the court had subject matter jurisdiction and that plaintiff had standing to maintain the challenge. We noted that plaintiff was still in place as the incumbent and that option years remained on the contract: "but for the in-sourcing, we have every reason to assume it would still be on the job." 2012 WL 2367035, at *4. In considering whether to grant injunctive relief, we also pointed out that, if the Air Force had failed properly to conduct a cost comparison, plaintiff "plainly would be injured, assuming the Air Force's only option is to exercise the next option term." *Id.* at *6.

We also declined, however, to issue a preliminary injunction. We were not persuaded that plaintiff likely would succeed on the merits. It delayed bringing suit until the eve of the expiration of the prior contract, and the Air Force had put forth several affidavits itemizing the harm to national security that would follow the entry of an injunction. *Id.* at *6-9.

Plaintiff was permitted to file a second amended complaint reflecting the end of the contract but otherwise maintaining the same legal theory. Defendant then filed its renewed motion to dismiss, alleging the changed circumstance—that the base supply contract expired on June 29, 2012, with no further extension invoked by the Air Force so that plaintiff is no longer the

---

[3] The Ike Skelton National Defense Authorization Act for Fiscal Year 2011, Pub. L. 111-383, 124 Stat. 4137, 4184 (Jan. 7, 2011), amended 10 U.S.C. § 2463 by specifically requiring the Directive–Type Memorandum 09–007 analysis.

incumbent. At the time of our earlier opinion, plaintiff was in the sixth of possibly nine extension years on the original contract.

We agree with defendant that the change in circumstances requires a reassessment of the suit's viability. The contract is completely at an end. Plaintiff is no longer on the job, nor does the Air Force have the contractual right, in the event the court were to grant relief, to invoke contract extensions so that plaintiff could resume the work.

Defendant argues that this change in circumstance affects our jurisdiction to hear the case because our rationale supporting plaintiff's standing is now drawn into question.[4] For the following reasons, we agree.

We recognized in our earlier opinion that our exercise of jurisdiction in cases such as this, where the government elects *not* to use a contract to obtain services, was less than intuitive. We were persuaded, however, by the expansive definition of "procurement" adopted by the Federal Circuit in construing 28 U.S.C. § 1491(b)(1). *See Distributed Solutions, Inc. v. United States,* 539 F.3d 1340, 1346 (Fed. Cir. 2008) ("including 'the process for determining a need for . . . services'"). Such a construction, along with the fact that a meaningful remedy was at least theoretically available, supported subject matter jurisdiction.

We also found that plaintiff had the standing necessary to support our exercise of jurisdiction. Under 28 U.S.C. § 1491(b)(1), plaintiff must be an "interested party" to proceed with its bid protest in this court. We note that the Federal Circuit recently reminded us in *Systems Application & Technology v. United States*, No. 2012-5004, 2012 WL 3631249 (Fed. Cir. Aug. 24, 2012), that the concept of interested party has special meaning in a bid protest, and that the meaning further will depend on the nature of the protest: "[a] protest will, by its nature, dictate the necessary factors for a 'direct economic interest.' In pre-award protests, for instance, the plaintiff must show a 'non-trivial competitive injury which can be addressed by judicial relief.'" *Id.* at *5 (quoting *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1362 (Fed. Cir. 2009)).

---

[4]Defendant characterizes the ground for dismissal as mootness, by which it means that relief is no longer available.

Plaintiff argues that subject matter jurisdiction persists and that the court still could address the question of whether the Air Force complied with the applicable statutes. As plaintiff points out, when the DOD invokes 10 U.S.C. § 129a(e) in order to transfer performance of services from contractors to civilian employees, it must comply with 10 U.S.C. § 2463, which plainly presumes the pendency of a contract. And we recognize that, at the time it filed suit, plaintiff was still the incumbent. Defendant argues, however, that the expiration of the contract eliminates that contractual "hook" between plaintiff and the work being performed in-house. It also argues that expiration of the contract means that plaintiff no longer has the standing necessary to maintain this action. We find it unnecessary to press the question of whether subject matter jurisdiction is imperiled because we accept defendant's argument that plaintiff no longer has standing.

In the cases on which we relied to find standing, *Vero Tech. Support, Inc. v. United States Department of Defense*, 733 F. Supp. 2d 1336, 1339, 1343-44 (S.D. Fla. 2010), *aff'd*, 437 F. App'x 766 (11th Cir. 2011); *Santa Barbara Applied Research, Inc. v. United States*, 98 Fed. Cl. 536, 541 (2011); *LABAT-Anderson, Inc. v. United States*, 346 F. Supp. 2d 145, 153-54 (D.D.C. 2004), those plaintiffs had a then-existing contract. These decisions appear to assume, rather than explain why, however, incumbency is necessary to support standing. We recognize that standing would be problematic if the government simply elects *ex nihilo* to undertake new work which theoretically could be done by outside contractors. There has to be an existing contract because 10 U.S.C. § 2463 plainly presumes the pendency of a contract against which to compare the cost of performance by government employees.[5] The question posed here, however, is whether jurisdiction is lost when the contract expires after the complaint is filed.

The only decision on which we relied that deals with a *former* contractor's interest is *Triad Logistics Services Corp. v. United States,* 2012 U.S. Claims LEXIS 393, at *45 (Fed. Cl. Feb. 29, 2012). As defendant points out, there this court declined to find standing because the contract on which the

---

[5] And we also posit that standing would be questionable if a former contractor brought suit after the analysis had been completed and only after the work had been brought in-house. That circumstance likely would be viewed through the same prism through which we view the present case—namely, relief would be so problematic that standing could not be supported.

plaintiff had been the incumbent was at an end: "[T]his plaintiff . . . no longer has an economic interest in the contract work since plaintiff's contract ended by its own terms . . . ." *Id.* at 65. To avoid this analysis being merely circular in nature, however, we must assume that the court was adverting to its prior observation of the "difficulties in fashioning a workable remedy" because the contract was at an end. *See id.*

In resolving the issue, we are guided by the fact that the only remedy sought by plaintiff is a permanent injunction. It cannot claim money damages, and a declaration that the Air Force failed to comply with the relevant statutes or that its actions were arbitrary would do nothing for plaintiff in the absence of an injunction ordering the Air Force to cease doing the work. In that event, presumably the Air Force would be forced to contract on an interim basis with a private firm. The closest to hand, also presumably, would be plaintiff.

The Federal Circuit's recent decision in *Systems Application & Technology v. United States*, also reminds us that an examination of the economic interest supporting standing must be relevant to the particular facts, and specifically that the court must satisfy itself that it is undertaking an exercise that could lead to plausible judicial relief. 2012 WL 3631249, at *5; *see also Weeks Marine*, 575 F.3d at 1362. Stating the present problem in light of what would happen if we entered an injunction leads inexorably to the conclusion that standing now has been stretched to the snapping point.

Under no circumstances would we enter an injunction now that the Air Force has completely absorbed the work itself. Plaintiff does not challenge the circumstances of which we took account in denying a preliminary injunction. We relied on a series of affidavits from Air Force personnel outlining the disruptive consequences to national security of an injunction *prior* to the end of the contract. Now that the contract is over, an injunction against Air Force performance would inevitably be more disruptive of services, more disruptive to the lives of individuals, and cause more waste as the transition to government personnel was unwound. During oral argument, counsel for plaintiff shrugged off these difficulties with the suggestion that plaintiff would be willing to quickly step in to resume performance. But this suggestion highlights another aspect of how circumstances have changed. The Air Force no longer has the option of avoiding rules dictating competition; it would have to consider opening such an interim contract to other bidders.

In addition, because the only remedy sought is equitable, it is worth iterating that plaintiff knew of the Air Force's intention to in-source the contract on February 2, 2011, after the cost comparison had been completed. On February 3, 2012, the Air Force informed plaintiff that it was unlikely to exercise the remaining options and predicted that the contract would expire on June 29, 2012. The Air Force even requested that plaintiff prepare a comprehensive transition plan. Plaintiff did not file this protest until June 1, 2012, however, less than a month before the contract expired and the Air Force in-sourcing initiative would take full effect.

While jurisdiction normally would be fixed at the time of filing a suit, Article III of the Constitution creates an ongoing requirement of a case or controversy; the litigant must maintain a posture in which the injury suffered could be "redressed by a favorable judicial decision" admitting of specific relief. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). This case-or-controversy requirement subsists through all stages of the proceeding. The parties must continue to have a personal stake in the lawsuit. "[I]t is not enough that a dispute was very much alive when suit was filed, or when review was obtained in the Court of Appeals." *Id.* at 477-78. We conclude that plaintiff lost its standing when its contractual relationship with the Air Force ended.

## CONCLUSION

For the reasons stated above, we grant defendant's motion to dismiss filed on July 2, 2012. The Clerk is directed to enter judgment in favor of the United States and dismissing the complaint for lack of jurisdiction. No costs.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge